IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

REYNALDO VALDEZ,

      Petitioner,

v.

TRACY JOHNS,

      Respondent.

CIVIL ACTION NO.: 5:19-cv-12

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Reynaldo Valdez ("Valdez"), who was formerly incarcerated at the D. Ray James Correctional Facility in Folkston, Georgia, filed this 28 U.S.C. § 2241 Petition.[1] Doc. 1. Respondent filed a Motion to Dismiss, and Valdez filed a Response. Docs. 4, 7. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Valdez's Petition for failure to exhaust his administrative remedies. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Valdez leave to appeal *in forma pauperis*.

---

[1] At the time Respondent filed his Motion to Dismiss, Valdez's release date was set to be October 18, 2019. Doc. 4 at 1. It appears that Valdez was released from the Bureau of Prisons' custody on September 6, 2019. https://www.bop.gov/inmateloc/, search for Number 08633-043, Reynaldo Valdez, last accessed Oct. 31, 2019. Valdez has yet to notify the Court of his new address, if he was released, though he was ordered to do so. Doc. 3. Thus, it is not clear if at this time Valdez's petition is moot. Accordingly, the Court addresses Respondent's Motion to Dismiss.

**BACKGROUND**

Valdez is currently serving a federal sentence for at the D. Ray James Correctional Facility for conspiracy to distribute and possess with intent to distribute heroin, cocaine, and marijuana. His projected release date was October 18, 2019. Valdez is currently enrolled in the Bureau of Prisons' ("BOP") Institution Hearing Program ("IHP"), which provides deportation, exclusion, or removal proceedings to sentenced aliens. Valdez wants any deportation or removal proceedings under the IHP to occur as soon as possible, so that when he completes his sentence (or soon thereafter) he will be immediately deported to his home. Valdez contends that, unless the Court intervenes, he will likely spend another three to six months (after competition of his sentence) in the custody of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), waiting for deportation.

Specifically, Valdez asserts ICE violated his right to due process by not beginning his deportation proceedings "as soon as possible" after his conviction so that any questions regarding his deportation would be resolved before the expiration of his term of imprisonment. Doc. 1 at 7, 10. Valdez contends the BOP classified him as a "possible deportable alien" and designated him to D. Ray James to resolve his immigration issue. Id. at 10. Because ICE did not follow the proscribed rules, Valdez maintains his period of incarceration could extend three to six months longer than it should. Id. As relief, Valdez asks for ICE to issue a final order of removal, to have a videoconference with an immigration judge, and to be released at the end of his sentence. Id. at 8.

Respondent moves to dismiss Valdez's Petition based on Valdez's failure to exhaust his administrative remedies, because Valdez sets forth conditions of confinement claims that are not

2

cognizable under § 2241, due to lack of jurisdiction, and because the BOP has, in fact, followed its IHP policy. Doc. 4.

In response, Valdez contends he can show he cannot obtain relief through D. Ray James's administrative remedies process. Doc. 7 at 1–2. Valdez asserts he can challenge the legality of his custody for immigration proceedings under § 2241, his claims are not speculative, and disputes any claim that the staff at D. Ray James cannot initiate the resolution of immigration proceedings. Id. at 2–5.

## DISCUSSION

### I. Whether Valdez Exhausted His Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475).[2] Failure to exhaust administrative remedies is an affirmative defense, and inmates are

---

[2] The Court notes that, in certain circumstances, it should not determine exhaustion issues. Specifically, in Jenner v. Stone, this Court noted, "Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, 'that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense.'" Jenner v. Stone, No. CV 317-068, 2018 WL 2976995, at *2 (S.D. Ga. May 16, 2018), *report and recommendation adopted*, 2018 WL 2972350 (S.D. Ga. June 13, 2018) (quoting Santiago-Lugo, 785 F.3d at 474–75). "However, 'a court may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits

3

not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust— irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[3]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements

---

without reaching the exhaustion question." Id. (quoting Santiago-Lugo, 785 F.3d at 475). It is not "easier to deny" Valdez's Petition on the merits rather than looking at Respondent's exhaustion argument.

[3]  Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

define what is considered exhaustion.  <u>Jones</u>, 549 U.S. at 218.  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.  <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000).  The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit.  <u>Id.</u>

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.  <u>Bryant v. Rich</u>, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1157 (11th Cir. 2005)); <u>Sewell v. Ramsey</u>, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.     Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action.  <u>Bryant</u>, 530 F.3d at 1374 (internal punctuation and citation omitted).  Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court.  <u>Id.</u>  In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  <u>Id.</u> at 1376.

In <u>Turner v. Burnside</u>, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

5

administrative remedies.[4]  First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.  Id. at 1082.  If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.  Id.  However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.  Id.  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  Id.  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  Id. at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Valdez's Efforts at Exhaustion

Valdez, in response to the Motion to Dismiss, asserts he can "show" he cannot obtain relief through the administrative remedies process at D. Ray James.  Doc. 7 at 1.  He bases his assertion on the response he received to his Step 1 administrative remedies request.  Id. at 1–2; Doc. 7-1 at 2.

Valdez executed his Petition on February 1, 2019, doc. 1 at 9, and it was filed in this Court on February 8, 2019.  Doc. 1.  Respondent filed his Motion to Dismiss on March 29, 2019.  Doc. 4.  Valdez did not submit his Step 1 administrative remedies request, or a GEO/DRJCP Attempt at Informal Resolution, until April 3, 2019.  Doc. 7-1 at 2 (Valdez's Step 1 request for

---

[4]  Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241 proceeding.  See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

6

administrative remedies, citing to attachments to Respondent's Motion to Dismiss in this action). Staff responded to this informal resolution request on April 12, 2019. Id. & at 2.

This record demonstrates Valdez did not begin the administrative remedies process until after he filed his Petition and Respondent filed his Motion to Dismiss. While Valdez failed to exhaust his administrative remedies at the first Turner step, see Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)), the Court nevertheless proceeds to the second Turner step and makes specific factual findings pertinent to the exhaustion question.[5]

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures.[6] This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form within 20 days of the informal resolution request. An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form within five business days after the Step 1 response is returned. If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the Bureau of Prisons' ("BOP") Administrator of the Privatization Management Branch (BP-10), so long as the appeal

---

[5] In addressing the exhaustion issue, Valdez attempts to clarify the date he filed his administrative remedies request. According to Valdez, he placed his Response to the Motion to Dismiss in the prison mail system on April 10, 2019, yet staff did not sign his administrative remedy request until April 12, 2019. Doc. 7 at 5; Doc. 7-1 at 2. Valdez's Response was filed on April 18, 2019. Doc. 7. Any discrepancies in these dates are immaterial, as it is clear Valdez did not begin the administrative exhaustion process until after he filed his § 2241 Petition.

[6] It has been the Court's experience that inmates at D. Ray James Correctional Facility are to use the contractor's grievance procedures for exhaustion purposes, which vary slightly from the BOP's administrative remedies process, although both procedures require a final appeal with the Office of General Counsel. See, e.g., Martinez v. Johns, Civil Action No.: 5:17-cv-120, 2017 WL 4934674, at *3 (S.D. Ga. Oct. 31, 2017), *adopted by* 2017 WL 6029622 (S.D. Ga. Dec. 5, 2017).

involves BOP-related matters. Betancur v. Johns, Civil Action No.: 5:15-cv-87, 2016 WL 6396016, at *4 (S.D. Ga. Oct. 26, 2016), *adopted by* 2016 WL 7257000 (S.D. Ga. Dec. 14, 2016). Examples of BOP-related matters which must be appealed through the BOP are: issues concerning classification and designation, sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, Civil Action No.: CV511-069, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (S.D. Ga. Oct. 26, 2011). If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel (BP-11). If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. Betancur, 2016 WL 6396016, at *4.

The evidence before the Court reveals Valdez has filed one administrative remedy request for BOP-related matters prior to the date Respondent filed his Motion to Dismiss, and that request did not relate to the issues he raises in his Petition. Doc. 4-1 at 2. Glenda Dykes, an administrative remedies clerk with the BOP, declares that the administrative remedy request Valdez submitted concerned a disciplinary proceeding, not his immigration status or any future immigration hearing. Id. As support, Ms. Dykes cites the Administrative Remedy Generalized Retrieval data for Valdez, dated March 19, 2019, which reveals Valdez filed an administrative remedy on October 14, 2016 in response to disciplinary hearing proceedings. Id. at 12.

Specifically, the evidence before the Court regarding Valdez's attempts at exhaustion reveals that he filed one administrative remedy request in 2016 on an unrelated matter and did not begin his administrative remedies process concerning the issues raised in his § 2241 Petition until after Respondent filed his Motion to Dismiss. Valdez's claims in his Petition concern BOP-

related matters (classification or designation) which must be filed and appealed through the above-described process, which Valdez failed to do.  Additionally, based on Respondent's submissions, it appears that the BOP's administrative remedies are available to Valdez, despite any contentions he may raise to the contrary.  Indeed, Valdez has presented no facts that would suggest that exhaustion would be futile or otherwise excused.  Consequently, the Court should **GRANT** Respondent's Motion to Dismiss and **DISMISS without prejudice** Valdez's claims based on his failure to exhaust his available administrative remedies prior to the filing of his § 2241 Petition.[7]

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Valdez leave to appeal *in forma pauperis*.  Though Valdez has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

---

[7]     Given this recommended disposition of Respondent's Motion, it is unnecessary to address the remaining grounds of his Motion.  Doc. 4.  However, if the Court were to consider these other grounds, Respondent's Motion would likely be granted on those grounds as well.  Valdez contends his right to due process has been violated as a result of the failure to conduct an immigration hearing prior to his release from custody, docs. 1 at 11, but that is not a cognizable claim under § 2241.  See Helbig v. United States, Case No. 4:18cv547, 2019 WL 4061973, at *2 (N.D. Fla. Aug. 7, 2019) (finding allegation that failure to conduct immigration hearing did not "present a viable due process claim" because petitioner had no liberty interest in her custodial classification or rehabilitative programs) (citing cases) Shah v. Johnson, No. 17-CV-1488, 2018 WL 1057100, at *3 (W.D. La. Feb. 26, 2018) (rejecting claims concerning IHP proceedings under § 2241, as such claims must be brought as civil rights actions).  Valdez cites 8 U.S.C. § 1228(a) in support of his contention he should be given an immigration hearing before he is released from custody, doc. 1 at 10, but by its plain language, § 1228 "'does not require the government to institute and conclude removal proceedings prior to the expiration of an alien's sentence in a correctional facility,'" and, furthermore, any such claim by Valdez would be unripe.  See Helbig, 2019 WL 4061973, at *2 (quoting Quevedo-Roque v. U.S. Fed. Bureau of Prisons, No. 1:12-cv-0072, 2012 WL 3156794, at *2 (E.D. Cal. Aug. 3, 2012) (citing § 1228(a)(3)(B))).  Valdez also cites IHP Program Statement 5111.04, but there is no indication here that the BOP did not comply with that provision.  Moreover, even if the BOP did not comply with Program Statement 5111.04, the BOP's violation of its own program statement is not a basis for habeas relief.  Id. at *3.

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Valdez's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Valdez *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DISMISS** Valdez's Petition **without prejudice** for failure to exhaust his administrative remedies. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Valdez leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions herein.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Valdez at his last known address and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of October, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA